CHRISTOPHER J. GREEN, Petitioner-Appellee, v. SAFECO LIFE INSURANCE COMPANY *et al.*, Respondents-Appellants (Stone Street Capital, Inc., Appellee).

Fifth District   No. 5—99—0489

Opinion filed March 24, 2000.

Richard M. Roessler and Karen E. Mason, both of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellants.

Richard O. Hart, of Hart & Hart, of Benton, for appellee.

JUSTICE WELCH delivered the opinion of the court:

The issue presented to this court is whether the circuit court of Hamilton County erred in approving a request by petitioner, Christopher Green, pursuant to section 155.34 of the Illinois Insurance Code (215 ILCS 5/155.34(b) (West 1998)), to assign some of his structured settlement payments to Stone Street Capital, Inc. (Stone Street), in exchange for a lump-sum payment. Respondents, Safeco Life Insurance Company and Safeco Assigned Benefits Service Company (SABSCO), challenge the approval, arguing petitioner's settlement agreement clearly and unambiguously prohibits petitioner from making such an assignment. For the reasons set forth below, we reverse the judgment of the circuit court of Hamilton County.

The facts in this case are as follows. On November 19, 1993, petitioner's mother was killed in an automobile accident. At the time, petitioner was 12 years old. Petitioner, through the guardian of his estate, settled all claims (*i.e.*, wrongful death, general damages) with Redland Insurance Company (Redland). The settlement agreement with Redland provides that Green receive five annual payments in the amount of $8,000 commencing on December 5, 1998, a lump-sum payment of $8,900 on December 5, 2002, a lump-sum payment of $10,800 on December 5, 2005, and a lump-sum payment of $15,120 on December 5, 2010. The settlement agreement contains an antiassignment clause, which provides that these periodic payments "cannot be accelerated, deferred, increased[,] or decreased by [petitioner] or any payee; nor shall [petitioner] or any payee have the power to sell, mortgage, pledge, encumber[,] or anticipate the Periodic Payments or any part thereof, by assignment or otherwise." The settlement agreement further provides that, within the meaning of section 130(c) of the Internal Revenue Code of 1986 (Internal Revenue Code) (26 U.S.C. § 130(c) (1994)), Redland may make a "qualified assignment" to SABSCO of its obligation to make future payments.

On May 10, 1994, Redland made a "qualified assignment" to

SABSCO. Redland and SABSCO entered into a uniform qualified-assignment agreement. The agreement noted that Redland and SABSCO desired to make a "qualified assignment" within the meaning of section 130(c) of the Internal Revenue Code. The qualified-assignment agreement also contained an antiassignment provision, which provided, "None of the Periodic Payments may be accelerated, deferred, increased[,] or decreased and may not be anticipated, sold, *assigned*[,] or encumbered." (Emphasis added.)

Subsequent to the "qualified assignment" agreement, SABSCO purchased a "qualified funding asset" in the form of an annuity contract from Safeco Life Insurance Company. This also contained an antiassignment clause, which provided, "No payment under this annuity contract may be accelerated, deferred, increased, or decreased, or anticipated, sold, assigned, or encumbered in any manner by the annuitant (or either joint annuitant) or any other recipient of the payment."

On February 17, 1999, petitioner entered into an agreement to assign some of his structured settlement payments to Stone Street in exchange for a lump-sum payment. Petitioner agreed to assign his annual payments of $8,000, beginning with the December 5, 1999, payment and ending with the December 5, 2002, payment, along with the lump-sum payment of $8,900 due on December 5, 2002. Stone Street agreed to give petitioner an immediate lump-sum payment of $23,883. The aggregate amount of the payments petitioner agreed to assign was $40,900.

■ On April 15, 1999, petitioner petitioned the circuit court for approval of the assignment. This request for approval was made pursuant to what is now section 155.34(b) of the Illinois Insurance Code. This section provides:

> "No person who is the beneficiary of a structured settlement of a claim for personal injury may assign in any manner the payments of the settlement without prior approval of the circuit court of the county where an action was or could have been maintained." 215 ILCS 5/155.34(b) (West 1998).

On June 17, 1999, the circuit court approved Green's assignment under section 155.34(b) of the Illinois Insurance Code.[1] The circuit court provided no reasoning in support of its ruling, merely stating that the assignment "should be approved." Respondents now appeal.

■ Before we can determine whether the circuit court's decision

---

[1]Although the circuit court's order indicates that its ruling is pursuant to section 155.31, effective July 30, 1998, Public Act 90—655 renumbered section 155.31 as section 155.34.

was in error, we must first determine which standard of review to apply. Respondents contend this is an issue of law and that, therefore, we should apply a *de novo* standard of review. Petitioner contends the issue is whether the circuit court properly exercised its discretion and that, therefore, we should apply an abuse-of-discretion standard. We agree with petitioner. Where discretion has been vested in the circuit court, only a clear abuse of discretion or an application of impermissible legal criteria justifies reversal. See *Boatmen's National Bank v. Martin*, 155 Ill. 2d 305, 314 (1993). Section 155.34 grants the circuit court discretion to approve or disapprove an assignment of structured settlement payments. Therefore, as discretion is vested in the circuit court, we shall review the circuit court's approval under an abuse-of-discretion standard. We now turn to the arguments raised by respondents on appeal.

Respondents contend the circuit court erred in approving the assignment because the terms of the settlement agreement clearly prohibit petitioner from assigning any of his payments. Respondents argue that the terms of the settlement agreement are clear and unambiguous and that, therefore, the circuit court erred by failing to uphold and enforce the clear terms of the contract.

Our research of Illinois case law has revealed only one case wherein an Illinois appellate court has reviewed a circuit court's decision pursuant to section 155.34. As the facts in that case are nearly identical to the facts in the case at bar, it is helpful for us to discuss that decision. In *Henderson v. Roadway Express*, 308 Ill. App. 3d 546 (1999), the Fourth District Appellate Court affirmed the circuit court of Vermilion County's decision denying a request for an approval of an assignment of structured settlement payments under section 155.34. In *Henderson*, the plaintiff attempted to assign some of the future settlement payments for an immediate, discounted lump-sum payment. See *Henderson*, 308 Ill. App. 3d at 547. Similar to the settlement agreement in the case at bar, the settlement agreement in *Henderson* had an antiassignment provision that clearly and unambiguously prohibited the plaintiff from assigning any of his periodic payments. See *Henderson*, 308 Ill. App. 3d at 547. The circuit court in *Henderson* ruled that the settlement agreement "clearly and unambiguously prohibited the parties from assigning any of the periodic payments," and the court therefore refused to approve the plaintiff's assignment. *Henderson*, 308 Ill. App. 3d at 548.

On appeal, the Fourth District Appellate Court addressed a "barrage" of arguments raised by the plaintiff. *Henderson*, 308 Ill. App. 3d at 548. Eventually, it agreed with the circuit court that the antiassignment provision in the settlement agreement "very clearly forbids [the

plaintiff] from assigning his periodic payments." *Henderson*, 308 Ill. App. 3d at 552. The appellate court further held that the provision was bargained for and that the plaintiff provided no persuasive authority to justify why the court should ignore the parties' clear intentions to incorporate this bargained-for provision into the settlement agreement. *Henderson*, 308 Ill. App. 3d at 552. The circuit court's refusal to approve the assignment was therefore affirmed.

■ In the instant case, as in *Henderson*, the settlement agreement clearly and unequivocally forbids petitioner from assigning any portion of his periodic payments. Petitioner does not dispute the clear and unambiguous language of the settlement agreement, nor does petitioner contend that the provision was not freely bargained for. Public policy strongly favors the freedom to contract. See *Holstein v. Grossman*, 246 Ill. App. 3d 719, 726 (1993). Settlement agreements are encouraged and should be given their full force and effect. See *M.H. Detrick Co. v. Century Indemnity Co.*, 299 Ill. App. 3d 620, 624 (1998).

■ Construing a contract is a question of law, and our duty is to effectuate the intent of the parties to the contract. See *Henderson*, 308 Ill. App. 3d at 548. "The intent of the parties must be determined from the plain and ordinary meaning of the language of the contract, unless the contract is ambiguous." *Henderson*, 308 Ill. App. 3d at 548. Parties to a contract are free to include any terms they choose, as long as those terms are not against public policy and do not contravene some positive rule of law. See *McMahon v. Chicago Mercantile Exchange*, 221 Ill. App. 3d 935, 945 (1991). Such a contract is binding on both parties, and it is the duty of the court to construe it and enforce the contract as made. See *McMahon*, 221 Ill. App. 3d at 945.

In the instant case, the plain and ordinary meaning of the language of the antiassignment provision in the settlement agreement is to prohibit petitioner from making an assignment of his periodic payments. The terms of the contract are clear. We believe that the circuit court abused its discretion by failing to uphold the clear terms of the settlement agreement. Wherefore, the circuit court's approval of petitioner's request for an assignment constitutes an abuse of discretion.

Wherefore, the judgment of the circuit court is reversed.

Reversed.

HOPKINS and RARICK, JJ., concur.